638 So.2d 1209 (1994)
STATE of Louisiana
v.
John E. MINGO.
No. 93 KA 0827.
Court of Appeal of Louisiana, First Circuit.
June 24, 1994.
*1210 William J. Burris, Franklinton and William R. Campbell, Jr., New Orleans, for plaintiff-appellee State of La.
Herbert R. Alexander, Mandeville, for defendant-appellant John E. Mingo.
Before FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
Defendant, John E. Mingo, was initially charged by bill of information with possession with intent to distribute cocaine, a violation of LSA-R.S. 40:967A. After the trial court denied defendant's motion to suppress evidence, defendant pled guilty to an amended bill of information, charging him with possession of cocaine, a violation of LSA-R.S. 40:967C. Defendant reserved his right under State v. Crosby, 338 So.2d 584 (La.1976), to appeal the trial court's ruling on the motion to suppress. Subsequently, defendant was sentenced to imprisonment at hard labor for five years; however, the court suspended the sentence and placed defendant on supervised probation for three years subject to various conditions. Defendant has appealed, urging in a single assignment of error that the trial court erred by denying the motion to suppress.

FACTS[1]
On January 22, 1991, Sergeant Mike Edwards, while working in the Narcotics Division of the Bogalusa City Police Department, received a telephone call from a confidential informant (CI) he knew. During this conversation, the CI told Edwards that a specifically named individual, John Edward Mingo, was on the corner of "Second and Deloraine" selling marijuana. At the time, Edwards did not personally know Mingo; but Edwards knew the name. However, a fellow officer, Detective Gomez, knew defendant on sight.
After Edwards received the tip from the CI, he and Detectives Gomez and Ulvik[2] went to the Fourth Street area to look for Mingo. The officers first went to the street intersection to which the CI had referred in the tip but failed to find defendant at the location. The officers then drove around the block. As they were making their second approach at the intersection of Second Avenue and Fourth Street from Second Avenue, defendant passed them driving what Edwards thought was a gray Oldsmobile Cutlass.
Defendant pulled into Foster's Bar, stopped his vehicle and exited it. The officers drove around the corner and then pulled up beside defendant's vehicle. As defendant *1211 was about to walk into the bar, Edwards called defendant by name. Defendant stopped. Edwards told defendant why they wanted him, placed defendant against a wall and patted defendant down. During the search of defendant's person, the officers found a "cut corner" of green vegetable matter believed to be marijuana. The search also resulted in the seizure of a set of scales containing a white powder residue, which were found in the front pocket of defendant's jacket. The officers then obtained defendant's oral consent to search defendant's vehicle. During the search of the vehicle, the officers seized some rolling papers and approximately six hundred dollars in cash.

ASSIGNMENT OF ERROR
In his sole assignment of error alleging that the trial court erred by denying the motion to suppress, defendant contends that there was no reasonable cause to make an investigatory stop and search him. Defendant argues that there was no evidence showing the "basis of knowledge" for the CI's tip and that the only corroboration of the information supplied by the tip was that defendant was on Fourth Street after the officers arrived there. Defendant further asserts that the pat down exceeded the scope of a proper frisk for weapons pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
The Fourth Amendment to the United States Constitution and Article I, section 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by Louisiana Code of Criminal Procedure article 215.1, as well as both federal and state jurisprudence. Terry v. Ohio, supra; State v. Bracken, 506 So.2d 807, 811 (La.App.1st Cir.), writ denied, 511 So.2d 1152 (La.1987). Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether or not the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Pautard, 485 So.2d 909, 911 (La.1986). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Payne, 489 So.2d 1289, 1291 (La.App. 1st Cir.), writ denied, 493 So.2d 1217 (La.1986).
Reasonable cause to justify a lawful investigatory stop does not automatically justify a frisk for weapons. Criminality and weaponry are neither synonymous nor mutually inclusive. However, in many situations, the circumstances that justify the stop also warrant the frisk. See State v. Rodriguez, 476 So.2d 994, 997 (La.App. 1st Cir.1985).
The state bears the burden of proving the admissibility of evidence seized during a search without a warrant. LSA-C.Cr.P. art. 703(D). A search conducted without a warrant is per se unreasonable under the fourth amendment, subject only to a few specifically established and well-delineated exceptions. State v. Porterfield, 524 So.2d 1363, 1366, vacated on other grounds on rehearing, 541 So.2d 909 (La.App. 1st Cir.1988).
An informant's tip can provide a police officer with reasonable cause to support a Terry stop. State v. Thomas, 583 So.2d 895, 898 (La.App. 1st Cir.1991). To determine whether the information furnished by a confidential informant provides probable cause for an arrest or search, a court must utilize a "totality of the circumstances analysis" and consider, among other things, the informant's veracity, facts relating to the informant's basis of knowledge and corroboration of the informant's information. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Raheem, 464 So.2d 293 (La.1985). While an informant's past record for accuracy and reliability is one factor to take into account in determining the reliability of the tip in question, this alone will not always support a finding of probable cause. Corroboration of details of an informant's tip by independent police investigation is valuable in applying a totality of the circumstances standard to these type cases. *1212 See State v. Carey, 609 So.2d 897, 900 (La. App. 4th Cir.1992).
In this case, there were some discrepancies between the facts detailed in D-1 (the arrest report prepared by Edwards) and some of Edwards' suppression hearing testimony. In D-1, Edwards stated that defendant's vehicle was light brown. At the hearing, Edwards testified that he thought the vehicle was gray. In D-1, Edwards referred to the informant as an "unknown" informant. At the suppression hearing, Edwards emphatically maintained that he knew the informant; and he stated that he did not know why he made the reference in D-1 to the informant as an "unknown" informant. However, he did offer some explanation for the reference in D-1, by stating that the officers were busy at the time he prepared the arrest report and that he was just trying to complete the report. Additionally, while Edwards initially testified that the tipster had stated that defendant was standing on the street corner selling cocaine, he later corrected that testimony (after being allowed to refresh his memory by referring to his report), by making it clear that the tipster had stated that defendant was on the corner selling marijuana rather than cocaine.
After considering the totality of the circumstances in this case, we find that there was no reasonable cause to justify this investigatory stop. The veracity of the CI was established by Edwards' testimony that the CI had provided him with information previously to obtain search warrants and that prior tips provided by the CI had resulted in arrests and convictions. However, the only facts elicited in support of the CI's basis of knowledge of this information was disclosed during the following exchange between Edwards and defense counsel on re-cross examination:
Q. Did the informant indicate to you how he knew that John Mingo might have had marijuana in his pocket or might have been selling cocaine or might have been selling marijuana?
A. Other than the fact that he saw him selling the marijuana on the street.
The CI did not provide any details other than the defendant's name. The CI did not provide a description of the defendant nor did the CI provide information as to when the defendant was seen selling marijuana on the street.
Additionally, the only detail provided by the CI was not corroborated by the police officers because the officers did not find defendant selling marijuana at the corner where the CI had indicated defendant would be. Instead, they first observed him in his vehicle travelling on Fourth Street, which according to Edwards was in the area where the tipster had indicated defendant would be selling the drug. Therefore, the information provided by the CI was not corroborated by independent police investigation.
Because the officers lacked reasonable cause to make the investigatory stop, the trial court erred in denying defendant's motion to suppress. Thus, the denial of defendant's motion to suppress is reversed and the case is remanded to the trial court to proceed in a manner not inconsistent with this opinion.
REVERSED AND REMANDED.
PARRO, J., dissents.
NOTES
[1] At the hearing on the motion to suppress, the state presented the testimony of Bogalusa City Police Sergeant Mike Edwards. Defendant did not present any testimony. However, defendant did introduce D-1, a copy of the report (prepared by Edwards) of his January 22, 1991 arrest for the instant offense. The only other evidence introduced was S-1, a January 22, 1991 supplementary police report which was also prepared by Edwards.
[2] Edwards referred to Gomez and Ulvik only by the names "Gomez" and "Ulvik."