749 So.2d 802 (1999)
STATE of Louisiana In the Interest of R.D.
No. 99-KA-801.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 1999.
*803 Holly Hammett, Harvey, Louisiana, Attorney for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Alison Wallis, Laurence Alterman, Assistant District Attorney, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Panel composed of Judges CHARLES GRISBAUM, Jr., THOMAS F. DALEY and CLARENCE E. McMANUS.
DALEY, Judge.
The juvenile, R.D., appeals his adjudication as delinquent on the basis of possession of cocaine and marijuana. On appeal, he assigns the following errors:
1. The trial court erred in finding that the officer established reasonable grounds for truancy to transport the minor.
2. The trial court erred in finding that the child was taken into custody or arrested under Children's Code article 733.1 and that the search was proper as one incidental to an arrest.
3. The trial court erred in failing to find whether the officer possessed particular facts that he was in danger or that juvenile was armed and dangerous to justify a "safety pat-down frisk" of juvenile.
4. The trial court erred in finding that the evidence seized fell within the scope of the pat-down frisk.
After thorough consideration of the law and evidence, we affirm the trial court's adjudication.

FACTS
Officer David Holden of the Gretna Police Department testified that on April 8, 1999, at approximately 1:50 p.m., he was patrolling the area of Belle Chase Highway near the Piggly Wiggly grocery store in Gretna when he saw R.D. walk around the corner of the building. Officer Holden testified that he knew R.D. and asked him if he had an excuse to be out of school. R.D. could not produce an excuse. Officer Holden called Gretna Junior High School, where he knew the juvenile to be a student, and a representative of the school told him that R.D. had a court date that afternoon. Officer Holden, at that point, knew that R.D. should either be in court or in school, so he detained R.D. for truancy. Officer Holden testified that, once he had verified R.D. was a truant, "I was going to either, either I'd take him to school or I'd have to take him to his parents." Officer Holden decided to transport R.D. to the Gretna Police Station where he would contact R.D.'s mother. After having decided to detain R.D. in order to transport him, Officer Holden brought R.D. over to his vehicle and executed a pat-down search prior to placing R.D. in his unit. Upon patting the juvenile down, Officer Holden "felt something" in R.D.'s back pocket. Officer Holden removed the object from R.D.'s pocket, which was a plastic bag containing a substance later identified as marijuana. When Officer Holden removed the marijuana from R.D.'s pocket, another plastic bag, containing what was later identified as crack cocaine, also fell out.
On May 12, 1999, the juvenile filed a Motion to Suppress the Evidence. The juvenile court ordered the motion hearing to be incorporated into the juvenile's adjudication *804 hearing. On May 12, 1999, the juvenile court heard testimony from Officer Holden. Based upon the officer's testimony, the trial court denied the juvenile's Motion to Suppress the Evidence and adjudicated the defendant delinquent for the offenses of possession of cocaine and possession of marijuana.[1] On June 3, 1999, the juvenile court imposed a one-year sentence in the Department of Corrections upon the juvenile for the possession of cocaine adjudication and a six-month sentence upon the possession of marijuana offense. Both sentences were suspended and the juvenile was placed on active probation until February 17, 2002. The juvenile's probationary terms for these and for the other offenses he was charged with were to run concurrently. The juvenile filed a timely appeal.

ASSIGNMENT OF ERROR NUMBER ONE
Appellant alleges that the trial court erred in finding that the officer established reasonable grounds for truancy to transport the minor. By this assignment, the juvenile argues that Officer Holden was not authorized to detain him.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is generally provided for by LSA-C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Gresham, 97-1158, p. 5 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988.
Officer Holden's authority to stop the juvenile was derived from LSA-Ch.C. art. 733.1. In the instant case, Officer Holden stopped R.D. when he realized that R.D., a student at Gretna Junior High School, was not in school during regular school hours. The Louisiana Children's Code article 733.1 authorizes the following:
A. In addition to the authority provided in Article 736, a peace officer, probation officer, or school attendance officer may briefly detain any child from the age of seven through sixteen whom the officer reasonably believes to be absent from school during normal school hours and the officer may question the child about his reasons for being absent.
B. If based on this inquiry the officer has reasonable grounds to believe that the child is absent from school without justification, the officer may release the child to his parents or transport the child to the appropriate administrator of the child's assigned school or to a receiving center designated by the parish school board for acceptance of such children.
C. Upon the child's transportation to either school or receiving center, the administrator shall promptly notify the child's parents.
D. If the officer has reasonable grounds to believe that the child is truant or that the family is otherwise in need of services, the officer or administrator may file a complaint pursuant to Article 731.
LSA-Ch.C. art. 733.1, comment (b) (emphasis added).
In the instant case, Officer Holden questioned R.D. regarding his absence *805 from school. Upon the juvenile's failure to produce justification for his absence, Officer Holden had probable cause to believe the juvenile was a truant. Officer Holden was then authorized to either release R.D. to his parents or transport him to the appropriate administrator of the child's assigned school or to a receiving center designated by the parish school board. Because Officer Holden was aware of the minor status of the juvenile and aware that school was still in session at the time of the stop, Officer Holden's stop and detention of the juvenile was authorized under LSA-Ch.C. art. 733.1 and the stop was valid based upon the precepts set forth in Terry v. Ohio, supra. Therefore, Assignment Number One has no merit.

ASSIGNMENTS OF ERROR NUMBERS TWO, THREE, AND FOUR:
These Assignments of Errors as set forth in appellant's brief are:
2) The trial court erred in finding that the child was taken into custody or arrested under Children's Code article 733.1 and that the search was proper as one incidental to an arrest;
3) The trial court erred in failing to find whether the officer possessed particular facts that he was in danger or that juvenile was armed and dangerous to justify a "safety pat-down frisk" of juvenile;
4) The trial court erred in finding that the evidence seized fell within the scope of the pat-down frisk.
By these assignments, R.D. argues Officer Holden was not justified in searching him and then seizing the evidence of marijuana and crack cocaine from the him.
An arrest is the "taking of a person into custody by another [through] actual restraint [that] may be imposed by force or may result from submission of the person arrested to the custody of one arresting him." LSA-C.Cr.P. art. 201; Fisher, 97-1133 at p. 6, 720 So.2d at 1183. In Fisher, the Louisiana Supreme Court outlined the criteria for determining whether there has been a custodial arrest:
Whether a person has been arrested is determined by an objective test; neither the person's subjective impression nor the lack of formality of the arrest resolves the issue.
The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person's liberty.
97-1133 at p. 6, 720 So.2d at 1183 (citations omitted).
A search incident to arrest is one of the recognized exceptions to the warrant requirement. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. London, 98-368 (La.App. 5 Cir. 10/28/98), 720 So.2d 1235. An arrest is lawful when it is based on probable cause. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179. Probable cause needed to make a full custodial arrest requires more than the reasonable suspicion needed for a brief investigatory stop.
Once a lawful arrest has been made, a warrantless search of the arrestee's person and of the area within his immediate control is permissible in order to remove any weapons from his person and to prevent evidence from being destroyed. U.S.C.A. Const.Amend. 4; LSA-Const. Art. 1, § 5, State v. Freeman, 97-1115 (La.App. 5 Cir. 12/29/98), 727 So.2d 630.
The trial court, in its Reasons for Judgment, states that the search was incident to a lawful arrest because Officer Holden's *806 detention of the juvenile was a "taking of the juvenile into custody." The juvenile court also reasoned:
The 1998 Author's Notes to the Louisiana Children's Code Handbook state that because truancy does not create any suspicion that the suspect is armed and dangerous, this article does not authorize a Terry protective frisk. However, this comment appears to address only the initial stop for questioning. The comment then addresses the next stage of the process, stating "If the officer's reasonable suspicion escalates to probable cause that the child is violating the compulsory school attendance laws, the officer may take the child into custody." McGough and Triche, Louisiana Children's Code Handbook, 1998. (West, 1998). This court reasons that because article 733.1 mandates the officer to transport the child after his inquiry establishes probable cause, there is justification for a protective frisk prior to placing the child in the police car, in order to ensure that the child possesses no weapons or other dangerous instrumentalities.
Such a search is generally referred to as a "search incident to arrest," and has long been accepted as an exception to the ban against warrantless searches.
We agree with the trial court's reasoning and application of the law. Officer Holden had taken R.D. into physical custody as the result of R.D.'s truancy. Though truancy is not defined as a crime in either the Children's Code or Title 14, it is an offense that authorized Officer Holden to place R.D. into custody and transport him. Clearly, at that point, R.D. was in full custodial detention and was not free to go. As such, Officer Holden's search of R.D. was a legal incident to his arrest and was not limited by the precepts of a Terry stop. The officer's search of R.D. and the removal of the contents of R.D.'s pockets was legal. See State v. Willis, 31,561 (La. App. 2 Cir. 1/20/99), 728 So.2d 493; State v. Collins, 97-2425 (La.App. 4 Cir. 10/21/98), 721 So.2d 503; State v. Tasby, 26,103 (La.App. 2 Cir. 6/24/94), 639 So.2d 469. Therefore, the trial court's judgment denying the Motion to Suppress was correct.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The delinquency adjudication is reflected on the May 27, 1999 judgment, which amends the May 12, 1999 judgment.